UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUDY DAVIS *et al.*,            )
                                )
      Plaintiffs,               )
                                )
v.                              )   Civil Action No. 14-1389 (RJL)
                                )
RICHARD SARLES *et al.*,        )
                                )
      Defendants.               )

**MEMORANDUM OPINION**
September 29, 2015 [#10, #11, #12, #15, #21]

FILED
SEP 29 2015
Clerk, U S District & Bankruptcy
Courts for the District of Columbia

Plaintiff Judy Davis is the mother of co-plaintiffs Zuri, Tavares, and Solomon Davis. Proceeding *pro se,* plaintiffs bring this suit alleging violations of their civil rights against the Washington Metropolitan Area Transit Authority ("WMATA"); Richard Sarles in his official capacity as Chief Executive of WMATA; several WMATA transit police officers in their official capacities;[1] the Metropolitan Police Department ("MPD"); MPD Chief Cathy Lanier in her official capacity; former United States Attorney for the District of Columbia Ronald Machen in his individual capacity; and attorney Daniel K. Dorsey in his individual capacity.[2] *See generally* Compl. [Dkt. #1]. This case is before

---

[1] Plaintiff also sues "Herbert Nichols" in his official capacity as a WMATA employee; however, as defendant WMATA's Partial Consent Motion to Dismiss Herbert Nichols [Dkt. #10] makes clear, Mr. Nichols is not now, nor was he at the time of the alleged incident, an employee of WMATA. Indeed, plaintiff has no further information on the position or location of this alleged defendant.

[2] Plaintiffs' complaint also names four District of Columbia Superior Court judges as defendants; however, in August 2014, the Court dismissed the complaint against these four judges on the ground of absolute immunity. *See* Memorandum Opinion and Order [Dkt. #6].

1

the Court on five separate motions to dismiss.[3] Having carefully considered the parties' pleadings, the relevant case law, and the entire record herein, for the reasons stated below, defendants' motions to dismiss are hereby GRANTED.

## BACKGROUND

This case arises from Solomon Davis' ("Mr. Davis") June 2013 encounter with WMATA transit police officers that resulted in his arrest and ensuing searches of his residence. For the purposes of the motions to dismiss, the Court takes all plaintiff's factual allegations as true. On June 14, 2013, Mr. Davis was riding his bike home when he was rear-ended twice by "transit officer Patrick Brandon/Brandon Patrick driving a WMATA police cruiser." Compl. Section IV, ¶ 1. The impact knocked Mr. Davis off of the bike "and over a fence." *Id.* Meanwhile, "several blocks away[,] . . . a suspect snatched a phone and fled on foot," but "the transit police were not then in 'hot pursuit' when they assaulted Solomon Davis." *Id.* ¶ 2. Plaintiff further states that the victim informed the transit officers and two MPD officers called to the scene that Mr. Davis was not the suspect, but he was nevertheless "left . . . in the clutches of the transit officers, who [] reported that they found a gun and [ ] placed Solomon under 'arrest.'" *Id.* ¶ 3-4. The officers then placed Mr. Davis in handcuffs, took him to the hospital "to tend to [his] injuries," and finally to the MPD's 5th District Headquarters. *Id.* ¶ 4. Eventually, Mr.

---

[3] WMATA's Partial Consent Motion to Dismiss Herbert Nichols [Dkt. #10]; Defendants Richard Sarles, Colin Dorrity, Erin Cooper, Joseph Lewis, Brandon Patrick, and WMATA's Motion to Dismiss [Dkt. #11]; Motion of Defendant Daniel K. Dorsey to Dismiss the Complaint, or in the Alternative, for Summary Judgment [Dkt. #12]; Defendants Metropolitan Police Department and Cathy L. Lanier's Motion to Dismiss [Dkt. # 15]; and Federal Defendant United States Attorney Ronald C. Machen Jr.'s Motion to Dismiss the Complaint [Dkt. #21].

Davis was charged with armed robbery and held at the D.C. jail for four days. *Id.* ¶ 6. According to plaintiff, the charge was reduced to felony possession of a gun "based exclusively on the 'charge' made by the defendant transit officers." *Id.*

On June 27, 2013, defendant Colin Dorrity obtained a warrant to search plaintiffs' home for guns.[4] *Id.* ¶¶ 7, 11. Thereafter, "approximately a dozen transit officers dressed as a military assault team, kicked or rammed the metal front door out of its frame and burst in with guns drawn, screaming obscene orders as they pointed the guns into the [plaintiffs'] faces." *Id.* ¶ 14. The plaintiffs were ordered to get down on the ground, handcuffed, and placed on their couch "as the transit officers ransacked their home in a search 'for guns' and finding none." *Id.*

Defendant Dorsey was Mr. Davis' court-appointed counsel who allegedly limited his representation "to convincing Solomon [ ] to plead guilty." *Id.* ¶ 8. On April 21, 2014, Mr. Davis' trial date, the U.S. Attorney's Office dismissed the case without prejudice. *See id.* ¶¶ 15-17. Plaintiff contends that the next day, defendant Herbert Nichols obtained a warrant to search plaintiffs' home for drugs. *Id.* ¶ 17. Later that day, the search warrant was executed in the same manner as before. *See id.* ¶ 18. "The transit officers allegedly found to [sic] small bags of marijuana" and took Mr. Davis and Tavares Davis to the MPD's 5th District station "where both were processed as 'criminal

---

[4] Plaintiffs reside on Fort Totten Drive in the District's northeast quadrant. The Court takes judicial notice of the fact that their listed address is in walking distance of the Fort Totten Metro Station. *See* www.apartments.com (listing distance as .4 miles).

defendants' even though neither had been arrested by an MPD officer." *Id.* ¶ 19. The U.S. Attorney decided not to prosecute these charges and dismissed the case. *Id.* ¶ 20.

Based on these alleged facts, plaintiffs filed suit in this Court on August 14, 2014, asserting claims against defendants for "willfully engaging in and carrying forth a conspiracy that subjected them to numerous violations of their civil, constitution, and Human rights within a general scheme of continued racial segregation and oppression otherwise known as 'Jim Crow.'" Compl. 3. Plaintiffs seek declaratory relief along with compensatory and punitive damages. *Id.* Defendants move to dismiss under Federal Rules of Civil Procedure 12(b)(1) and (b)(6).

## LEGAL STANDARDS

### A. Rule 12(b)(1)

Federal district courts are courts of limited jurisdiction and "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). On a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, "[t]he plaintiff bears the burden of establishing both the court's statutory jurisdiction and the government's waiver of its sovereign immunity." *American Road & Transp. Builders Ass'n v. Envtl. Prot. Agency*, 865 F. Supp. 2d 72, 80 (D.D.C. 2012). Because subject matter jurisdiction implicates the court's power to hear a claim, a Court has "an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." *Grand Lodge of the Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). Accordingly, when deciding a Rule 12(b)(1) motion for lack of subject matter jurisdiction, a court may give closer scrutiny to a plaintiff's factual

4

allegations than it does when evaluating a Rule 12(b)(6) motion for failure to state a claim. *Id.* at 13-14.

**B.  Rule 12(b)(6)**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated a claim. A complaint must be sufficient "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). Although a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* The facts alleged "must be enough to raise a right to relief above the speculative level." *Id.*

In deciding a Rule 12(b)(6) motion, the court must construe *pro se* filings liberally, *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999), but even a *pro se* complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face," *Twombly*, 550 U.S. at 570. Further, although factual allegations are presumed to be true for purposes of deciding the motion, this presumption does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S 662, 678 (2009).

**DISCUSSION**

Defendants have filed a total of five separate motions to dismiss in this case, contending, *inter alia*, that this Court lacks subject matter jurisdiction over certain of

plaintiffs' claims and that plaintiff has failed to state a claim for which relief can be granted. I take each of these motions in turn.

A. **WMATA Defendants' Motion to Dismiss**

The crux of plaintiffs' complaint is that the WMATA transit police lacked policing authority to engage in the alleged conduct and engaged in a conspiracy to deprive plaintiffs of their rights in violation of 18 U.S.C. §§ 241, 242. *See generally* Compl. Defendants Richard Sarles, Colin Dorrity, Erin Cooper, Joseph Lewis, Brandon Patrick and WMATA ("WMATA defendants") move to dismiss on various grounds, including that they are immune from suit. *See generally* Mem. of P. & A. in Supp. of Defendants' Mot. to Dismiss [Dkt. #11] ("WMATA Defendants' Mem."). I agree.

The Eleventh Amendment to the U.S. Constitution immunizes a State from suit in federal court, unless immunity is waived. It provides in pertinent part: "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. Amend. XI. It is well-established that the amendment applies to suits brought by citizens against their own States as well. *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).

"WMATA was created by a compact enacted by the Congress and to which the Commonwealth of Virginia, the State of Maryland and the District of Columbia are signatories." *Jones v. Washington Metro. Area Transit Auth.*, 205 F.3d 428, 432 (D.C. Cir. 2000). Our Circuit has "consistently recognized that in signing the WMATA Compact, Virginia and Maryland each conferred its immunity upon WMATA, which

6

therefore enjoys, to the same extent as each state, immunity from suit in federal court based on its performance of governmental functions." *Id.* Because the operation of a police force is a quintessential government function, when the WMATA transit police are involved, WMATA's function is governmental in nature. *See Morris v. Washington Metro. Area Transit Auth.*, 781 F.2d 218, 220 (D.C. Cir. 1986); *see also Beebe v. Washington Metro. Area Transit Auth.*, 129 F.3d 1283, 1287 (D.C. Cir. 1997) (specifying law enforcement as "a 'quintessential' governmental function" that "falls within the scope of WMATA's sovereign immunity"). Therefore, I find that WMATA is immune from the claims in this action.

Furthermore, to the extent plaintiffs have sued the other WMATA employees in their official capacities, they too are immune from suit. The Supreme Court has held that "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (internal quotation marks omitted). In other words, "the real party in interest . . . is the governmental entity and not the named official." *Id.* Therefore, I treat the claims against the WMATA employees sued only in their official capacities as claims against WMATA, and find that they are immune. Moreover, while plaintiffs do not directly allege wrongdoing by defendant Sarles, they suggest that they were dissatisfied with his response to plaintiffs' complaints regarding the actions of the WMATA transit officers under his authority. Compl. Section IV, ¶ 21. As such, their complaint suggests a claim for negligent hiring, training, or supervision; however, our Circuit has held that WMATA's "governmental function" immunity encompasses "the hiring, training, and

7

supervision of WMATA personnel." *See Burkhart v. WMATA*, 112 F.3d 1207, 1217 (D.C. Cir. 1997). For this reason, defendant Sarles is immune from the claims in this suit to the extent they relate to his supervisory role.

Although plaintiffs have specifically stated they are suing the WMATA transit police officers in their official capacities, it seems they are also stating claims against these defendants individually. *See* Compl. Section VI, ¶ 2. Nevertheless, plaintiffs' claims cannot survive WMATA defendants' motion to dismiss. As a preliminary matter, defendants argue correctly that plaintiffs' reliance on 18 U.S.C. § 241 and § 242 as the jurisdictional basis of their claim that defendants engaged in "an informal conspiracy to violate [their] civil, constitutional, and Human rights . . . because of their race," Compl. Section V, ¶ 1, fails as a matter of law since those federal criminal statutes do not create a private right of action.[5] *See Crosby v. Catret*, 308 Fed. Appx. 453 (D.C. Cir. 2009) (per curiam) ("The district court properly rejected appellant's attempt to invoke 18 U.S.C. § 241 and 18 U.S.C. § 242 to initiate a prosecution against the named defendants because there is no private right of action under these criminal statutes."). Moreover, even if there were some jurisdictional hook for plaintiffs' allegations, plaintiffs' entire theory for this case—that the WMATA transit police were acting without authority—is factually inaccurate. Far from acting without authority, Section 76 of the WMATA Compact, D.C. Code § 9-1107.1, explicitly states that WMATA transit police officers on duty in the

---

[5] For this reason, I find that plaintiffs' claim for a "[d]eclaratory judgment on the illegality of every action committed by each named defendant as a violation of 18 U.S.C. § 241 and 242" also fails. Compl. Section VI, ¶ 1.

District of Columbia have the same powers, rights, and responsibilities as a regular MPD officers. *See Griggs v. Washington Metro. Area Transit Auth.*, 232 F.3d 917, 921 (D.C. Cir. 2000). Accordingly, plaintiffs' allegations against the WMATA transit officers are insufficient as a matter of law.

**B.     Defendants MPD and Lanier's Motion to Dismiss**

Plaintiffs assert that defendants MPD and MPD Chief Cathy Lanier ("MPD defendants") are involved in the alleged violations because they, acting under an explicit and/or implicit policy, conspired to confer "de facto" policing authority on WMATA. *See* Compl. Section III. As a preliminary matter, the complaint against MPD is dismissed because, as MPD defendants correctly assert, MPD is a subordinate entity of the District of Columbia that is incapable of being sued in its own name. *See McRae v. Olive*, 368 F. Supp. 2d 91, 94-95 (D.D.C. 2005) (agreeing that "the MPD is not a separate suable entity"). It is well-settled that entities within the D.C. government are not suable absent statutory provisions allowing such suit, *see Trifax Corp. v. District of Columbia*, 53 F. Supp. 2d 20, 26 (D.C. Cir. 1999), and plaintiffs have not, and indeed cannot, point to such a statute here, *see* D.C. Code § 5-101, *et seq.* (addressing the duties and powers of the MPD but containing no provision for MPD to sue or to be sued in its own name).

With respect to defendant Lanier, who is sued in her official capacity as MPD Chief, MPD defendants rightly acknowledge that this official-capacity complaint against Lanier may be treated as brought against the District of Columbia. Mem. of P. & A. in Supp. of Defs. Metropolitan Police Dep't and Cathy L. Lanier's Mot. to Dismiss 6 [Dkt. #15] ("MPD Defs.' Mem."); *See Hafer*, 502 U.S. at 25. MPD defendants, however,

9

argue that substitution would be futile because plaintiffs have failed to state a claim upon which relief can be granted. I agree, and, therefore, dismiss the claims against defendant Lanier.

As stated above, plaintiffs' reliance on 18 U.S.C. § 241 and § 242 as the jurisdictional basis of their claims fails as a matter of law. Moreover, even if there were some jurisdictional hook for plaintiffs' allegations of conspiracy, the generalized facts alleged with respect to the MPD defendants fall well short of the pleading standard for conspiracy. In order to properly allege conspiracy, a plaintiff must allege: (1) an agreement between two or more defendants, (2) to participate in an unlawful act, (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement, and (4) which overt act was done pursuant to and in furtherance of the common scheme. *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983). "[A] conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality," *Twombly*, 550 at 557, and "dismissal is proper when a conspiracy allegation '[does] not plausibly suggest an illicit accord . . . .'" *RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 682 F.3d 1043, 1052 (D.C. Cir. 2012) (quoting *Twombly*, 550 U.S. at 567). In this case, plaintiffs allege that MPD defendants were involved in an illicit conspiracy based upon their conferring "de facto" policing authority on WMATA. Compl. Section III. This assertion is not only insufficient to support a claim of conspiracy, it is also wholly inaccurate. As MPD defendants point out, the MPD does not confer jurisdictional authority on WMATA transit police officers; rather, Section 76 of

10

the WMATA Compact, D.C. Code § 9-1107.1, does so. Therefore, plaintiffs have failed to allege facts sufficient to maintain suit against the MPD defendants.

## C. Defendant Machen's Motion to Dismiss

Plaintiffs include defendant U.S. Attorney for the District of Columbia, Ronald Machen Jr., in their complaint, alleging that he violated plaintiffs' civil, constitutional, and human rights by assisting in search warrant requests and pursuing a malicious prosecution. Compl. Section II, ¶ 5. Although plaintiffs have not explicitly invoked *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), because they allege constitutional violations and seek money damages against defendant Machen in his individual capacity, the complaint could be construed as being brought under *Bivens*. *See* Federal Def. U.S. Attorney Ronald D. Machen Jr. Mem. in Supp. of Mot. to Dismiss Compl. 5-6 [Dkt. #21] ("Def. Machen Mem."). Although the complaint's caption indicates that defendant Machen is being sued in his individual capacity, the complaint's content indicates otherwise. There are no allegations implicating defendant Machen in any specific wrongdoing, and plaintiffs even state that he "is a defendant as the respondeat superior for the [U.S. Attorney's Office]." Compl. Section II, ¶ 5. The law is clear, however, that *Bivens* liability cannot rest on a respondeat superior theory. *Iqbal*, 556 U.S. at 676 (explaining that in a *Bivens* action, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *see Simpkins v. District of Columbia Gov't*, 108 F.3d 366, 369 (D.C. Cir. 1997) ("If the *Bivens* defendant is found liable, he

becomes personally responsible for satisfying the judgment."). Therefore, I find that no *Bivens* claim has been properly stated against defendant Machen.[6]

## D. Defendant Dorsey's Motion to Dismiss

Plaintiffs allege that Daniel K. Dorsey, the attorney appointed by the court to represent Mr. Davis in his criminal case, "knowingly and deliberately denied Solomon Davis of his right to the competent, adequate, and effective representation" and generally supported the alleged conspiracy because he "made no effort to discuss the aforementioned legal issues, go over the allegations made, or in any way showed any interest other than convincing Solomon Davis to plead guilty." Compl. Section V, ¶ 9. As is true for the other defendants in this case, plaintiffs' assertions regarding defendant Dorsey's involvement in the alleged conspiracy are insufficient as a matter of law. Plaintiffs' complaint is completely devoid of any allegations that suggest, either directly or indirectly, that defendant Dorsey reached an agreement with the other defendants to violate plaintiffs' rights.

As to plaintiffs' claim that defendant Dorsey's counsel was inadequate, those allegations do not state a federal claim over which this Court would have original

---

[6] Plaintiffs' claims against the Assistant U.S. Attorneys allegedly involved suffer several additional defects. On a motion to dismiss a *Bivens* action, the Court must evaluate whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Barham v. Ramsey*, 434 F.3d 565, 572 (D.C. Cir. 2006). Taking the facts in the complaint as true in this case, it is not at all clear that plaintiffs' suffered a constitutional violation, either at the hands of the Assistant U.S. Attorneys or otherwise. Moreover, even if plaintiffs had more clearly stated their case, they face the additional hurdle of the absolute and qualified immunity that prosecutors enjoy. *See Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 683 (D.C. Cir. 2009) (describing prosecutors' absolute immunity from suits relating to their judicial advocacy); *Jones v. Lieber*, 579 F. Supp. 2d 175, 179-80 (D.D.C. 2008) (discussing prosecutors' qualified immunity from suits relating to their investigative and administrative activities).

jurisdiction, and, pursuant to 28 U.S.C. § 1367(c)(3), I decline to exercise supplemental jurisdiction over what amounts to a potential common law claim of legal malpractice.

E.  **WMATA'S Motion to Dismiss Herbert Nichols**

Defendant WMATA moves to dismiss defendant Nichols under Federal Rule of Civil Procedure 4, asserting there has been no valid service of process on defendant Nichols. *See* WMATA's Partial Consent Motion to Dismiss Herbert Nichols [Dkt. #10]. Rule 4(m) mandates that a defendant be served within 120 days of the filing of the complaint. A court may grant an extension, however, upon a showing of good cause or at its discretion. *Henderson v. United States*, 517 U.S. 654, 662 (1996).

As defendant WMATA explains, plaintiffs have alleged that defendant Nichols is a WMATA transit police officer and applied for a search warrant of plaintiffs' home. Compl. Section IV, ¶ 17. However, WMATA does not now employ, nor did it employ at the time of the incident, anyone by the name of Herbert Nichols. Mem. of P. & A. in Supp. of Def. WMATA's Mot. to Dismiss Herbert Nichols 5 [Dkt. #10] ("Def. Nichols Mem.").[7] Thus, although the docket shows that "Herbert Nichols" was served at the same time as the other WMATA transit police officer defendants, no such service actually occurred. *Id.* at 6. Plaintiffs do not contest that defendant Nichols is not, and was not at the relevant time, a WMATA employee as alleged in the complaint. *See* Pl.'s Reply 6 [Dkt. # 22]. Instead, they suggest that he may be an MPD officer. *Id.* Nevertheless, because plaintiffs have not offered any new information to assist the court

---

[7] This Court refers to the page numbers assigned in the ECF caption.

officers with serving defendant Nichols with process and because this Court finds that proceeding on claims against defendant Nichols would be futile in light of the Court's finding that plaintiff's allegations are altogether insufficient to state a claim as a matter of law, this Court declines to allow plaintiffs additional time to identify and serve this defendant.

## CONCLUSION

For the foregoing reasons, defendants' motions to dismiss are GRANTED. A separate Order consistent with this decision accompanies this Memorandum Opinion.

_____
RICHARD J. LEON
United States District Judge